### STATE v. TOM HARDEN AND ARTHUR BEALE.

(Filed 9 April, 1919.)

1. **Evidence, Exclusion—Courts—Inadvertence—Appeal and Error—Objections and Exceptions.**

    Where evidence has been admitted on the trial and afterwards excluded by the trial judge as incompetent, and the jury so instructed, his inadvertently referring to it in his charge without instruction thereon should be called to his attention at the time to afford him an opportunity for correction.

2. **Criminal Law—Evidence—Collective Facts—Incriminating Conduct.**

    Testimony of a witness upon whom the defendants were being tried for assault and battery, that they did not know each other at the time, and that the defendants entered a store soon after the occurrence, when he was calling a policeman by phone and "seemed surprised to see him there," is competent as one of a variety of facts presented to the senses at one and the same time (*S. v. Spencer*, 176 N. C., 712) and was a relevant circumstance for the jury to consider as tending to show their guilt by their action and conduct.

3. **Courts—Terms—Adjournments—Retiring Judge—Sheriffs—Statutes.**

    Where a newly elected judge, as successor to one who was to have held the term of a court commencing on 30 December, continuing for several weeks, and designated by the statute as a Spring Term, has ordered the sheriff to adjourn the court from day to day, not exceeding four days (which right the sheriff himself has under the statute, Rev., 1510), to enable him to take the oath of office and preside, and accordingly he qualifies and holds the court, those of his acts are valid, as an officer *de jure*. And if not, they are valid as those of an officer *de facto*, and an exception to the validity of a trial of an action on that ground is untenable.

INDICTMENT for highway robbery, tried before *Bryson, J.*, and a jury at Spring Term, 1919, of FORSYTH. Defendants were convicted, sentenced and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Hastings & Whicker for Arthur Beale, Fred M. Parrish for Tom Harden, defendants.*

WALKER, J.  The State's witness, A. J. Edwards, upon whom the assault and robbery were committed, during the course of his testimony stated that about ten or fifteen minutes after the robbery he was in George Anderson's store, telephoning for a policeman, when defendants entered the store (and seemed surprised to see him there).  The last part of this testimony, which we have enclosed in parenthesis, was excluded by the court on objection by defendants, but in stating the evidence and contentions to the jury the learned judge inadvertently referred to it, but gave no instruction in regard to it in his general charge, though at the time it was ruled out the judge told the jury they should not consider it.  The reference to this statement of Edwards is now assigned as error.

It is evident that the reference to the excluded statement was made by mistake, and should have been called to the court's attention at the time, so that it might then be corrected.  We have repeatedly held that this should be done when the judge is reciting the evidence or the contentions of the parties.  *S. v. Spencer,* 176 N. C., 709, is the most recent case settling this question, and it cites *S. v. Blackwell,* 162 N. C., 672; *S. v. Martin,* 173 N. C., 808; *S. v. Burton* 172 N. C., 939, there being numerous cases both before and since they were decided.

But the evidence was competent, as held in *S. v. Spencer, supra.*  The surprise or confused appearance of the defendants was natural evidence.  A man may show his guilt by his action or conduct, as well as by his words.  The witness did not know the defendants before he was robbed, and when they first entered the store he inquired of Van Surratt and Emma Anderson who they were.  If he did not know them and they did not know him, there was no reason for them to be surprised at seeing him in the store.  The fact that they were surprised is therefore a proper and relevant circumstance for the jury to consider.  Whether they were surprised is also for them to determine.  We said in *S. v. Spencer,* 176 N. C., at p. 712: "The instantaneous conclusions of the mind as to appearance, condition, mental or physical state of persons, animals and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, matters of fact and are admissible in evidence.  *S. v. Leak,* 156 N. C., 643; *Renn v. R. R.,* 170 N. C., 128.  Within this rule, the opinion of the witness as to the appearance of the dog and his conduct was permissible."  If the defendants exhibited surprise by their conduct, it was because they had been with the witness, George Edwards, and recognized him as the victim of their robbery, or rather it is a fair and reasonable

inference for a jury to draw. *Judge Gaston* said, in *S. v. Swink,* 19. N. C., 9 (which was approved in *S. v. Rowe,* 98 N. C., 629, and *S. v. Spencer, supra*) : "All the surrounding facts of a transaction may be submitted to the jury when they afford any fair presumption or inference as to the question in dispute. Upon this principle it is that the conduct of the accused at the time of the offense or after being charged with it, such as flight, the fabrication of false and contradictory statements, the concealment of the instruments of violence, the destruction or removal of proofs tending to show that an offense had been committed or to ascertain the offender, are all receivable in evidence as circumstances connected with and throwing light upon the question of imputed guilt." *S. v. Hastings,* 86 N. C., 596. We are of the opinion that the defendants were properly tried, and that the evidence fully sustains the verdict and judgment.

The right of Judge Bryson to preside at the court is questioned by an exception of the defendants, but we think without sound reason. We will briefly state the facts: The Court Calendar in that judicial district is based upon two fixed periods of the year—the first Monday of March for the spring ridings, and the first Monday in September for the fall ridings, and the courts are required to be held commencing on those days or on a certain designated number of Mondays before and after, for each of the counties in rotation. The Public Laws of 1917, ch. 169, provided that the particular court in question should commence on the ninth Monday before the first Monday in March which, it so happened, fell upon 30 December, 1918, the first week being for the trial of civil cases, there being three weeks of the term. Judge Lane had presided at the Fall Terms of 1918 of Forsyth Superior Court, and the contention of the defendants is that he should have held the court at which they were tried and convicted. Judge Bryson was elected for the Twentieth Judicial District, and was commissioned and duly qualified as such, and assigned by statute to hold the courts of the Eleventh District. When his right to hold the court was challenged, he made and ordered to be entered in the minutes the following findings: "That the term of Superior Court for Forsyth County, at which the defendants were tried and convicted, was the regular term of court fixed by the statute, beginning upon 30 December, 1918, and continuing for a term of three weeks. That no judge appearing upon Monday, 30 December, 1918, it was the duty of the sheriff of said county, in compliance with the law, to open said court and adjourn the same from day to day for the first four days of said term. That the adjournment of said court on Monday and Tuesday by said Sheriff Flynt was in compliance with the statute, and that the direction to the sheriff by wire from Judge Bryson, who was assigned by statute to hold the courts of the Eleventh

Judicial District of North Carolina, for the Spring Term of 1919, was lawful and in compliance with the statute, and that the said court was legal and properly constituted."

It appears, therefore, that as no other judge was present on the first Monday of court, it was adjourned by the sheriff from day to day, under Rev., sec. 1510, and Judge Bryson "being present" before sunset of the fourth day of the court, he organized the same and proceeded with the trial of causes, and the transaction of the other business of the court. This was all regular and within the intent and spirit of the statute, even if not within its letter, and we have so held in *S. v. McGimsey*, 80 N. C., 377. Under the statute and that case the sheriff could have adjourned the court from day to day, until the fourth day, without any special order from the judge, as he is so directed to do by the statute itself, and in *Norwood v. Thorp*, 64 N. C., 682, it was said: "The provision of the Code of Civil Procedure, sec. 396 (Revisal of 1905, sec. 1510), that where the judge fails to appear at any term until the fourth day thereof, inclusive, the sheriff shall adjourn the court until the next term, does not avoid the acts of any term where, upon the nonappearance of the judge, the sheriff did not in fact adjourn the court, and the judge afterwards (here, in the second week) actually appeared and held court." Judge Bryson appeared immediately after he was inducted into office, and we are clearly of the opinion that he rightfully presided at the court, and all of its proceedings thereafter taken were valid, and that he was judge of the court *de jure*. The record sets forth that a regular term of the Superior Court was opened and held Wednesday, instead of the Monday preceding, fixed by the statute as the first day, and it has been held by us that upon this recited fact the presumption is that the sheriff adjourned the court from day to day, as he is required to do by the statute, and that the court was legally held and its proceedings were valid. *S. v. Weaver*, 104 N. C., 758, where *Justice Avery* said: "The record of the term at which the case was tried before Judge Bynum sets forth that 'at a Superior Court, convened and held in and for the county of Granville and State of North Carolina, at the courthouse thereof in Oxford, on Wednesday, 24 April, 1889, present,' etc. It is contended by counsel that the fact that the court appears to have been first opened on Wednesday is fatal to the jurisdiction. The sheriff is required by section 926 of The Code to 'adjourn the court from day to day until the fourth day of the term, inclusive,' etc., if the judge of the Superior Court shall not be present. It was therefore lawful to open the court as late as Thursday, and it must be presumed that it was adjourned from day to day, as the law directs, by the sheriff."

In any view of the matter, Judge Bryson was a *de facto* officer, and his acts were valid as such so far at least as the public and third persons

are concerned. This was expressly held in *S. v. Lewis,* 107 N. C., 967, 970, where the question is fully discussed by *Justice Avery.* Our case is certainly within the third rule stated by *Chief Justice Butler* in *S. v. Carroll,* 38 Conn., 449, which authority was cited with approval in the *Lewis case,* where *Justice Avery* said: "If Judge Whitaker was acting either *de jure* or *de facto* as judge of the Superior Court of Rockingham County in opening and organizing that court, and in presiding at the trial of the defendant until the jury returned a verdict of guilty, it was error to allow the motion of the defendant and enter the order arresting the judgment. Were we to concede not only that the Governor did not have the power, under the Constitution, to appoint him and clothe him with the rightful authority, but that his acts as a *de facto* officer also ceased to be valid and binding as to the public and third persons, when he declared in open court his purpose to abdicate because he was of opinion that the said term could not have been lawfully held except by a successor regularly appointed and commissioned by the Governor to fill the vacancy caused by the death of Judge Shipp, still his refusal to proceed further with the business of the court would not affect the validity of any previous act done under color of his appointment from the Governor, and when he was holding himself out to the public as the rightful incumbent by virtue of the special commission entered of record. Judge Whitaker was a *de facto* officer so long as he continued to preside and to assert his power under and by virtue of the commission issued by the Governor, even if we concede, for the sake of argument, that he was not the rightfully constituted judge of the Superior Court of Rockingham County, and that his power as a *de facto* officer continued only so long as he exercised it." See, also *S. v. Hall,* 142 N. C., 710, which cites and approves *S. v. Lewis, supra; S. v. Speaks,* 95 N. C., 689; *Norfleet v. Staton,* 73 N. C., 546; *Burke v. Elliott,* 26 N. C., 360, and *Burton v. Patton,* 47 N. C., 124. We might rest this part of the case upon other reasons, but it is not necessary that we should do so, as we hold that Judge Bryson acted properly and rightly in opening and holding the court, and that his right to do so appertained to him as a *de jure* officer, designated by the law to hold this particular court, among others, in the district.

While the term of this court commenced in December, next before the last day of that month, it is specifically described by the statute as one of the Spring Courts in the year 1919, and must be regarded as such, the law having so provided in clear and explicit language.

A careful inspection of the record proper and case on appeal convinces us that no error has been committed.

No error.